**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JIMMY DEAN HARRIS, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>JIM FARRIS, Interim Warden, )<br>Oklahoma State Penitentiary, )<br>)<br>Respondent. ) | Case No. CIV-08-375-R |

## ORDER

On October 28, 2019, the Tenth Circuit remanded this case with instructions to conduct an evidentiary hearing and consider certain threshold issues. *Harris v. Sharp*, 941 F.3d 962 (10th Cir. 2019). Following a status conference, this Court instructed Petitioner to prepare a pre-hearing opening brief addressing all procedural and legal issues that need to be resolved prior to the evidentiary hearing. Petitioner submitted his Pre-Hearing Opening Brief [Doc. No. 111], to which Respondent responded [Doc. No. 112] and Petitioner replied [Doc. No. 113]. Oral argument was held on January 8, 2021.

### RELEVANT PROCEDURAL BACKGROUND

On September 26, 2001, an Oklahoma County jury convicted Petitioner of first-degree murder, shooting with intent to kill, and assault and battery with a dangerous weapon. *See Harris v. State,* 84 P.3d 731, 738 (Okla. Crim. App. 2004). Petitioner received a sentence of death for the murder. *Id.*

Following Petitioner's trial, the Supreme Court held in *Atkins v. Virginia*, 536 U.S. 304, 317 (2002) that the Eighth Amendment prohibits the execution of intellectually disabled persons, but left to the states the task of defining intellectual disability.[1] Oklahoma took up *Atkins'* mandate by adopting the following standard for an intellectual disability that renders a person ineligible for the death penalty:

> A person is "mentally retarded": (1) If he or she functions at a significantly sub-average intellectual level that substantially limits his or her ability to understand and process information, to communicate, to learn from experience or mistakes, to engage in logical reasoning, to control impulses, and to understand the reactions of others; (2) The mental retardation manifested itself before the age of eighteen (18); and (3) The mental retardation is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication; self-care; social/interpersonal skills; home living; self-direction; academics; health and safety; use of community resources; and work.
>
> It is the defendant's burden to prove he or she is mentally retarded by a preponderance of the evidence at trial. Intelligence quotients are one of the many factors that may be considered, but are not alone determinative. However, no person shall be eligible to be considered mentally retarded unless he or she has an intelligence quotient of seventy or below, as reflected by at least one scientifically recognized, scientifically approved, and contemporary intelligent quotient test.

*Murphy v. State*, 54 P.3d 556, 567–68 (Okla. Crim. App. 2002), *overruled in part on other grounds by Blonner v. State*, 127 P.3d 1135, 1139 (Okla. Crim. App. 2006).[2]

---

[1] The Supreme Court formerly employed the phrase "mentally retarded," but now "uses the term 'intellectual disability' to describe the identical phenomenon." *Hall v. Florida*, 572 U.S. 701, 704 (2014).

[2] This is the definition in place at the time of Petitioner's 2005 resentencing trial. Oklahoma has since amended and codified the definition of intellectual disability in Okla. Stat. tit. 21, § 701.10b. However, as the law in effect at the time of Petitioner's trial, the *Murphy* definition applies to Petitioner's claim. *See Harris*, 941 F.3d at 974.

Petitioner timely appealed his conviction and sentences to the Oklahoma Court of Criminal Appeals and raised, *inter alia*, a claim based on *Atkins*. *See Harris*, 84 P.3d at 731 n. 21. He also filed an application requesting the case be remanded to the trial court for an evidentiary hearing regarding his *Atkins* claim. *Id.* The OCCA affirmed the convictions and non-capitals sentences but reversed the death sentence on other grounds and remanded for a new sentencing trial. *Id.* at 757.

The resentencing trial took place in 2005 and resulted in a sentence of death for the murder conviction. *See Harris*, 941 F.3d at 972. During his direct appeal from the resentencing, Petitioner raised a claim of ineffective assistance of counsel based on his resentencing trial counsel's failure to seek a pre-trial determination that Petitioner was intellectually disabled and therefore ineligible for the death penalty. *See Harris,* 164 P.3d at 1116-1117. He also submitted an application for evidentiary hearing. Petitioner's application for evidentiary hearing, direct appeal from the resentencing, and application for post-conviction relief were all denied by the OCCA. *Id.*; *Harris v. State*, 167 P.3d 438 (Okla. Crim. App. 2007).

Petitioner next sought federal habeas relief and advanced his claim that counsel performed ineffectively by failing to request an *Atkins* hearing. *See Harris v. Royal*, No. CIV-08-375-F, 2017 WL 1403302, at *18 (W.D. Okla. Apr. 19, 2017), *aff'd in part, vacated in part, rev'd in part sub nom. Harris v. Sharp*, 941 F.3d 962 (10th Cir. 2019). The federal court denied relief. *Id.* On appeal to the Tenth Circuit, Petitioner again raised his ineffective assistance of counsel claim. *Harris*, 941 F.3d at 974. The Tenth Circuit concluded that trial counsel performed deficiently by not seeking a pre-trial determination

as to intellectual disability, *id.* at 976, but an evidentiary hearing was necessary to determine whether Petitioner was prejudiced by counsel's failure.[3] *Id.* at 987. Specifically, the Tenth Circuit remanded the case "for an evidentiary hearing as to prejudice" and instructed that "the parties should be able to present expert testimony on whether [Petitioner] satisfied Oklahoma's test for an intellectual disability." *Id.*

The parties have identified and briefed several disputed issues that bear on the scope of the evidentiary hearing. The Court will address each of these in turn.

## DISCUSSION

### I. Applicability of Current Clinical Standards

Although the parties agree that the *Murphy* definition is the controlling definition of intellectual ability, they dispute what clinical standards should inform the Court's application of this definition. Relying on a series of post-*Atkins* Supreme Court decisions,[4] Petitioner argues that current clinical standards apply. Respondent counters that only

---

[3] The Tenth Circuit also vacated the district court's rejection of Petitioner's cumulative error claim and instructed the court to consider certain preliminary matters in revisiting this claim. *Id.* at 1012. Petitioner has not identified any issues related to the cumulative error claim that require pre-hearing briefing.

[4] Petitioner specifically cites to *Moore v. Texas*, ___ U.S. ___, 139 S. Ct. 666 (2019) ("*Moore II*"), *Moore v. Texas*, ___ U.S. ___, 137 S. Ct. 1039 (2017) ("*Moore I*"), and *Hall v. Fla.*, 572 U.S. 701 (2014). These cases emphasize *Atkins'* guidance regarding the importance of using current clinical standards to evaluate intellectual disability. The Tenth Circuit has held that the Supreme Court's decisions in *Hall, Moore I,* and *Moore II* are a mere application of *Atkins* that apply retroactively to cases on collateral review. *Smith v. Sharp*, 935 F.3d 1064, 1085 (10th Cir. 2019). None of these cases, however, squarely address what clinical standards are relevant for the purpose of evaluating prejudice for an ineffective assistance of counsel claim. As explained *infra*, in the context of an ineffectiveness claim, where the Court must evaluate whether counsel's deficient performance was prejudicial, the relevant clinical standards are those that were current at the time of the deficient performance.

clinical standards in existence at the time of Petitioner's 2005 resentencing apply to the prejudice inquiry.

The Court is mindful that the inquiry in this case concerns whether Petitioner was prejudiced by his trial counsel's failure to request an *Atkins* hearing prior to his resentencing trial. This inquiry requires the Court to determine whether trial counsel "could have proven the existence of an intellectual disability." *Harris*, 941 F.3d at 982. What trial counsel "could have proven" necessarily requires reference to the standards that were in place at the time the deficient conduct occurred. Indeed, it would be nonsensical to hold that a criminal defendant was prejudiced by his trial counsel's failure to raise an argument based on clinical standards that were not even in existence at the time of the conduct in question.

The conclusion that existing clinical standards must be used is further compelled by the Tenth Circuit's opinion in this case. The Tenth Circuit noted that an assessment of prejudice requires a factfinder to apply Oklahoma's test for intellectual disability, *i.e.* the *Murphy* definition. *Id.* at 982-983. An application of this test must necessarily be informed by standards that prevailed at the time the *Murphy* definition was used; not standards that developed at a later point. *See Smith v. Sharp,* 935 F.3d 1064, 1078 n. 6 (10th Cir. 2019) (citing to the version of the American Association on Mental Retardation's definition that was in place at the time of the petitioner's trial); *Littlejohn v. Royal*, 875 F.3d 548, 556 (10th Cir. 2017) (approving of expert witness' reliance on a previous version of the Diagnostic and Statistical Manual of Mental Disorders because it was the version used to originally diagnose petitioner's condition.) Accordingly, the Court's application of the

*Murphy* definition in assessing prejudice will be informed by the clinical standards in existence at the time of the Petitioner's 2005 resentencing trial.

## II. Testimony from New Expert Witnesses

The parties next dispute whether Petitioner should be able to call expert witnesses other than or in addition to those who have previously testified or provided a report.[5] In particular, the parties dispute whether Petitioner should be permitted to present evidence resulting from a formal adaptive behavior assessment.

In its order, the Tenth Circuit instructed that "[a]t [the evidentiary] hearing, the parties should be able to present expert testimony on whether [Petitioner] satisfied Oklahoma's test for an intellectual disability." *Harris*, 941 F.3d at 987. Oklahoma's test for an intellectual disability requires Petitioner to establish "significant limitations in adaptive functioning" in at least two skill areas. *Murphy*, 54 P.3d at 567-568. To provide a meaningful predication of whether trial counsel could have proven an intellectual disability at a pretrial hearing, Petitioner's experts must be asked whether he has significant limitations in adaptive functioning. If, in the experts' estimation, a formal adaptive behavior assessment would have been necessary to answer that question in 2005, then

---

[5] At oral argument, Petitioner indicated that he anticipates presenting one previously unidentified expert witness to testify as to the results of a formal adaptive behavior assessment. Previously identified experts include Dr. Jennifer Callahan, Dr. Ray Hand, Dr. Wanda Draper, Dr. John Smith, Dr. Nelda Ferguson and Dr. Martin Krimsky. Nineteen years have passed since Plaintiff's initial trial in 2001 and fifteen years since Plaintiff's resentencing trial in 2005. Due to the passage of time, Dr. Krimsky and Dr. Ferguson are no longer available to testify. However, their prior testimony and reports are part of the record available to this Court in reviewing Petitioner's claim.

Petitioner may present that evidence at the evidentiary hearing.[6] Importantly, Petitioner has consistently argued that he has adaptive behavior deficits and has previously identified evidence in the record that supports this claim. *See* Brief of Appellant at 11, *Harris v. State*, D-2005-117 (Okla. Crim. App. May 18, 2006); *see also Harris*, 941 F.3d at 986. However, because the state court did not grant his request for an evidentiary hearing, he has not previously been able to develop and bring together this evidence. Accordingly, the Court finds that it is appropriate to permit Petitioner to supplement his previously identified evidence of adaptive behavior deficits by allowing a qualified expert to complete a formal adaptive behavior assessment.

This approach is consistent with the Tenth Circuit's opinion. Although at times the opinion references a need to hear "these experts testify," the Court's holding on this issue simply instructs that Petitioner "should be able to present expert testimony" and does not limit the evidence that may be presented to only those experts that had previously been identified. *Id*. at 982, 987. The Tenth Circuit's opinion also relies on *Littlejohn v. Trammell*, 704 F.3d 817 (10th Cir. 2013), where the district court was similarly instructed to conduct an evidentiary hearing on the issue of prejudice. *Id.* at 983. On remand, the district court in *Littlejohn* permitted additional expert testimony during the evidentiary hearing. *Littlejohn v. Trammell*, No. CIV-05-225-M, 2014 WL 3743931 (W.D. Okla. July 30, 2014). Although the Tenth Circuit did not specifically discuss the additional expert testimony in the

---

[6] Respondent is free, of course, to cross-examine Petitioner's experts as to why a formal adaptive behavior assessment was not completed prior to their opining on Petitioner's intellectual functioning or to argue any other issue that impacts the weight of the evidence.

subsequent appeal, neither did it reject the testimony as procedurally improper. *Littlejohn v. Royal*, 875 F.3d 548 (10th Cir. 2017).

Respondent argues that supplementation of Petitioner's evidence with an adaptive behavior assessment risks rendering the claim unexhausted. *See* 28 U.S.C. § 2254(b). The exhaustion doctrine requires a habeas petitioner to first exhaust all available state court remedies. *Fairchild v. Workman*, 579 F.3d 1134, 1151 (10th Cir. 2009). To be exhausted, the claim must have been "fairly presented" to the state court, meaning that petitioner raised the substance of the federal claim in state court. *Id.* Although a habeas petitioner is not permitted to fundamentally alter his claim upon arriving in federal court, "not every new piece of evidence makes a claim a new one." *Id.* at 1149. For example, in *Vasquez, v. Hillery*, 474 U.S. 254 (1986), the Supreme Court held that new, previously unsubmitted affidavits and computer analysis was "supplemental evidence" that "did not fundamentally alter the legal claim already considered by the state courts." *Id.* at 260.

The Tenth Circuit applied the exhaustion doctrine in *Fairchild*, 579 F.3d at 1134, and Respondent relies on this case in advancing his failure to exhaust argument. In *Fairchild*, the petitioner brought an ineffective assistance of counsel claim based on his trial attorney's failure to develop certain mitigation evidence. *Id.* at 1140. In state court, the petitioner "argued that trial counsel was ineffective in failing to investigate his history of drug use, head injuries, and amateur boxing" but "did not allege any particular impairments." *Id.* He "only briefly mentioned the possibility of brain damage in his state application" and "presented only minimal evidence that if trial counsel had actually undertaken a proper investigation of such [a brain] impairment that he would have found

the impairment to be present." *Id*. at 1149. However, in his federal habeas claim, the petitioner argued "that counsel failed to appreciate the significance of [a previously retained expert's] diagnosis that Mr. Fairchild suffered from an acute brain syndrome and he failed to order additional neuropsychological testing." *Id*. at 1147. Petitioner's habeas petition also included two affidavits from expert witnesses that "squarely addressed" the evidentiary deficiencies in his state claim and "establish[ed] the link between his prior history of drug abuse and head injuries and possible physical, organic brain injury; and furnish[ed] evidence that he in fact had such an injury." *Id*. at 1149.

After comparing the two claims, the Tenth Circuit held that although the petitioner "consistently argued that counsel's failure to investigate was constitutionally deficient performance," the "substance of the claim he presented in federal court differs materially from that which he presented in state court." *Id*. at 1147. The new evidence presented on federal habeas review "significantly altered" the claim by "placing it in a much stronger legal posture than in the state court proceedings." *Id*. at 1150 (quoting *Demarest*, 130 F.3d at 933). As the state court had never been presented with the specific allegations contained in the federal habeas petition nor been provided with the new experts' evidence, the Tenth Circuit found the claim unexhausted. *Id*. at 1152.

*Fairchild* is distinguishable from this case for two reasons. First, Petitioner has argued all along that his counsel was ineffective for failing to seek an *Atkins* hearing and that he has adaptive deficits sufficient to satisfy Oklahoma's test for an intellectual disability. *See* Appellant's Brief at 9 and 11, n. 10. Petitioner did not, as was the case in

*Fairchild*, make only general allegations of ineffectiveness that he now seeks to alter by pursuing a more specific claim.

Second, this is not a case where Petitioner failed to provide any evidentiary support for his claim. In *Fairchild*, the petitioner's state court claim failed to allege any specific impairments and provided only minimal evidence from which a court could infer that he in fact suffered from an impairment. But here, Petitioner's state court claim identified specific areas of adaptive deficits, cited to supporting evidence, and sought to further develop the evidence by requesting an evidentiary hearing.[7] *Id.*, *see also* Appl. for Evidentiary Hearing on Sixth Amendment Claims and Mot. to Supplement the Record on Appeal, Ex. A-2 at 9-10, *Harris v. State*, D-2005-117 (Okla. Crim. App. May 18, 2006). Thus, Petitioner fairly presented the factual and legal basis of his claim to the state court.

While additional expert testimony as to adaptive deficits may expand on or even strengthen his claim, at this juncture,[8] the Court cannot conclude that permitting a new expert witness to expound on this issue will significantly alter the claim such that the substance of the claim was not fairly presented in state court. *See Winston v. Kelly*, 592 F.3d 535, 548-550 (4th Cir. 2010) (finding that exhaustion doctrine did not prevent a

---

[7] Notably, further development of the facts supporting Petitioner's claim was stifled by the state court's denial of an evidentiary hearing. *See Harris*, 941 F.3d at 983 (finding that Petitioner "diligently tried to develop the factual foundations of his claim when he was in state court"); *see also Winston*, 592 F.3d at 555 (stating that "when a state court forecloses further development of the factual record, it passes up the opportunity that exhaustion ensures.").

[8] If necessary, the Court will revisit the issue of exhaustion after the evidence has been presented.

federal district court evaluating an *Atkins* claim from considering a new IQ test score that was not presented in state court).

### III.     Prioritization of Expert Testimony

Petitioner also argues that, although lay witnesses should be allowed to testify at the evidentiary hearing, expert testimony should be prioritized. Respondent concedes that expert testimony is necessary but argues that the factfinder is free to disbelieve expert testimony in favor of lay witness testimony. Thus, the parties agree that both lay and expert testimony is permissible and only dispute the weight that should be accorded such testimony.

Given the importance of clinical standards in assessing an intellectual disability, there is no doubt that expert testimony plays a key role in determining whether Petitioner was prejudiced by his trial counsel's failure to request an *Atkins* hearing. *See Smith*, 935 F.3d at 1077 ("*Atkins* clearly establishes that intellectual disability must be assessed, at least in part, under the existing clinical definitions applied through expert testimony" and recognizing "the centrality of expert testimony to our review of *Atkins* verdicts."). Experts, however, are not infallible. Their credibility may be questioned or their conclusions undermined by other evidence, including lay witness testimony. *See, e.g.*, *Malone v. Carpenter*, 911 F.3d 1022, 1036 (10th Cir. 2018) (finding "extraordinary" evidence of intent to kill despite expert's testimony to the contrary.)

The Court, while mindful of the centrality of expert testimony in assessing an intellectual disability, will make any credibility determinations or assessments as to the

weight that should be accorded to certain testimony after it has heard all the relevant evidence.

### IV. Manifestation of Intellectual Disability Before Age Eighteen

Finally, Petitioner argues that Respondent has waived any argument that Petitioner has not satisfied the second element of the *Murphy* definition – manifestation of intellectual disability before the age of eighteen – because it has never challenged this element. The Tenth Circuit found that the State "[did] not challenge the second element" and the "dispute exists on the first and third elements, which address [Petitioner's] intellectual and adaptive deficits." *Harris*, 941 F.3d 984. Respondent concedes that he does not contest the second element. Accordingly, the Court finds, as the Tenth Circuit did, that only the first and third elements of the *Murphy* definition remain at issue.

### CONCLUSION

In summary, the Court finds that:

- clinical standards in existence at the time of Petitioner's 2005 resentencing trial will inform the determination of whether Petitioner was prejudiced by trial counsel's failure to request a pretrial hearing as to intellectual disability;
- Petitioner is permitted to present testimony from a new expert witness based on a formal adaptive behavior assessment;
- both lay and expert testimony will be permitted and any assessments as to weight or credibility will be made after the evidence has been presented; and
- the second element of the *Murphy* definition has been conceded.

The scheduling of the evidentiary hearing, pretrial deadlines, and any further briefing will be done by separate order.

**IT IS SO ORDERED** this 19th day of January 2021.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE